UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| FOREIGN FUND A/K/A FIRST BANK, RON MEALING, JOHN SHIRCK, and WOLFGANG J. FASTIAN, | ) ) ) ) |
| Defendants, | ) ) ) |
| WALLY DOW, MW FIRST INC., MW FIRST TRUSTEES INC., WOLFGANG J. FASTIAN, DEANA WHITELY, and STAR CONNECTION, INC., | ) ) ) ) ) ) |
| Relief Defendants. | ) |

No. 3:04-0898
JUDGE ECHOLS

## MEMORANDUM

Pending before the Court are Plaintiff's Motions For Partial Summary Judgment Against Defendants Wolfgang J. Fastian, Ron Mealing, and John Shirck and Relief Defendants Deana Whitely and Star Connection, Inc. (Docket Entry Nos. 103-107), to which *pro se* Defendants Ron Mealing and John Shirck have responded in opposition. (Docket Entry Nos. 112 & 113.) For the reasons that follow, the Motions concerning Defendants Shirck, Mealing and Fastian will be denied because genuine issues of material fact exist for trial and Plaintiff Commodity Futures Trading Commission ("CFTC") has not shown its entitlement to partial summary judgment on liability. The Motions concerning Relief Defendants Deana Whitely and Star Connection, Inc., will be granted. Plaintiff's Motion for Sanctions Against Wolfgang J. Fastian for Failure to Comply with Court's Discovery Order (Docket Entry No. 116) will be RESERVED for ruling by the Magistrate Judge.

1

# I. FACTS

The CFTC is an independent federal regulatory agency that is charged with the administration and enforcement of the Commodity Exchange Act, 7 U.S.C. §§ 1, *et seq.* and the regulations promulgated under the Act. 17 C.F.R. §§ 1, *et seq.* Foreign Fund a/k/a First Bank ("Foreign Fund") is an Internet entity that conducted business through Internet websites www.foreign-fund.com and www.ff-bank.com. On its web pages Foreign Fund listed its address as 900 East Eighth Avenue, Suite 300, King of Prussia, Pennsylvania, an office suite with which Foreign Fund apparently had no connection. Foreign Fund has never been registered with the CFTC in any capacity.

Ron Mealing resides in Nashville, Tennessee. He was the custodian of two Foreign Fund accounts at the Bank of America in Nashville in the name of MWFIRST (TRUSTEES), INC. Mealing was also the president of the Tennessee corporation MWFIRST (TRUSTEES), INC.

John Shirck is now a Florida resident, but he previously resided in Mountain View, California. Shirck was the custodian of the Foreign Fund account at the Union Bank of California branch in Palo Alto, California, in the name of MWFIRST, INC. Shirck was also the president of the California corporation MWFIRST, INC.

Wolfgang J. Fastian resided in Troy, Pennsylvania, during the relevant time period. Fastian hosted and operated the Foreign Fund customer account data base and web pages located at the Internet address of www.ff-bank.com.

Deana Whitely resides in Alberta, Canada. She was employed as the "communications officer" of Foreign Fund and is believed to be the custodian of certain Foreign Fund customer funds.

Star Connection, Inc. is an entity that has received customer money sent to an account in its name at Reitumu Bank located in Riga, Latvia. None of these individuals or entities has ever been registered with the CFTC in any capacity.

The CFTC alleges that, between at least November 2003 and October 2004, Foreign Fund, through its websites and representatives, solicited at least $7.7 million in funds from customers who opened over 16,000 accounts, purportedly to be used for trading foreign currency futures contracts. The CFTC further alleges that Foreign Fund was an Internet entity established by anonymous persons who concealed their identities for the purpose of defrauding customers. Foreign Fund operated its initial website, www.foreign-fund.com through an Internet service provider based in the Ukraine. Foreign Fund's manager, "Martin," hired employees through the Internet, including Defendants Mealing and Fastian, each of whom began as customers of Foreign Fund. Defendant Shirck, also a Foreign Fund customer, was hired by Martin by telephone. The CFTC further alleges that, through the Foreign Fund websites and in emails, individuals soliciting investments for Foreign Fund defrauded customers by making material misrepresentations concerning Foreign Fund's trading and identity. The website and emails advertised huge investment returns, including representations that its "non-compounded" accounts paid up to 46% monthly and "compounded" accounts paid up to 100% monthly.

According to the CFTC, customer funds were not traded as promised. Of the more than $7.7 million that customers deposited into their Foreign Fund accounts, none was transferred to any regulated financial institution, clearinghouse, or other designated contract facility that might indicate the existence of trading activity. Instead, many of the funds were either returned to earlier customers or transferred overseas in an operation that was tantamount to a Ponzi scheme.

Customers sent approximately $3.8 million by check or bank wire to the Foreign Fund that was deposited into one of three domestic bank accounts controlled by Foreign Fund. These three domestic Foreign Fund bank accounts were opened and directly controlled by Defendants Mealing and Shirck. In addition to the customer money deposited in domestic banks, customers also sent additional funds to Foreign Fund accounts at Internet based firms e-gold, Intgold and Evocash.

3

Foreign Fund customers sent approximately $3.9 million to Foreign Fund's e-gold accounts alone. The CFTC alleges that Foreign Fund's Internet based value transfer firm accounts were controlled at various times by Defendant Fastian.

The CFTC alleges that Foreign Fund did not conduct foreign currency futures transactions on or subject to the rules of a board of trade that has been designated by the CFTC as a contract market, nor were Foreign Fund's transactions executed or consummated by or through a member of such a contract market. Further, Foreign Fund did not conduct transactions on a facility registered as a derivatives transaction execution facility. The CFTC alleges that most customers were not eligible contract participants under the Commodity Exchange Act, and Foreign Fund was not a proper counterparty which would exclude it from the CFTC's jurisdiction under the Act.

**A. Defendant Shirck**

As to Defendant Shirck, the CFTC alleges that, from February to May 2004, Foreign Fund directed its customers to send funds by check or wire to an account at the Union Bank of California held in the name of Relief Defendant MWFIRST, INC., that was controlled by Defendant Shirck as its custodian and sole signatory. Of the $1,261,973 in customer funds deposited to the Foreign Fund account in the name of MWFIRST, INC., at the Union Bank of California from March to May 2004, the CFTC alleges that Shirck sent approximately $533,000 to an overseas account in Riga, Latvia, in the name of Relief Defendant Star Connection, Inc., and Shirck also withdrew funds that he sent to other Foreign Fund customers and to Foreign Fund employees, including but not limited to, Deana Whitely, Wally Dow and himself. The CFTC further alleges that Shirck sent approximately $400,000 from the Union Bank of California account to an account at the Bank of America in Nashville in the name of MWFIRST (TRUSTEES), INC., and the remainder in the account to other Foreign Fund customers seeking to make withdrawals from their accounts. The CFTC alleges that none of the funds from the Union Bank of California account containing Foreign Fund customer

monies were received by or sent to any regulated financial institution, clearinghouse, or other designated contract facility that might indicate the existence of trading activity.

The CFTC alleges that Shirck, because he was himself a customer of Foreign Fund, knew that the customer funds he sent to Foreign Fund employees, to other Foreign Fund customers, or to accounts in Latvia were solicited with the exclusive purpose of engaging in foreign currency futures trading and he knew that customers intended the funds to be used for foreign currency futures trading. The CFTC alleges that Shirck misappropriated customer funds solicited for the exclusive purpose of engaging in foreign currency futures trading by sending them to Foreign Fund employees, to other Foreign Fund customers or to accounts in Latvia.

In response to the CFTC's motion for partial summary judgment containing these allegations, Defendant Shirck filed a *pro se* response that is not under oath and does not comply with Local Rule 56.01.[1] (Docket Entry No. 112.) In his response, Shirck flatly denies that he misappropriated any monies submitted by Foreign Fund customers, claiming that in the beginning he believed Foreign Fund was a legitimate investment opportunity. When he began to suspect that Foreign Fund was a Ponzi scheme, Shirck states he notified Martin that he would no longer be willing to maintain the banking and transfers of funds and wires, and at that point Defendant Mealing took over the banking. Shirck denies that he intended to cheat or defraud Foreign Fund customers, but claims he only carried out explicit instructions given to him by Martin.

One page of Shirck's deposition, taken by the CTFC on February 17, 2005, and submitted to the Court by the CFTC in support of its motion for partial summary judgment against Defendant Shirck, supports Shirck's position. When given an opportunity at the end of the deposition to "add to the record anything that you feel might be relevant," Shirck testified:

---

[1] Under Sixth Circuit law, non-prisoner *pro se* litigants receive no leniency for failing to comply with the Federal Rules of Civil Procedure, such as Rule 56 governing summary judgment motions. U.S. v. Ninety Three Firearms, 330 F.3d 414, 427 (6th Cir. 2003).

5

> I'd just kind of like to make a statement regarding my response to the [complaint] [b]y the CFTC. And I do not deny that I set up a bank account and that, you know, I wired funds. And even though I thought it was legitimate, obviously, it was not.
>       But the point I just wanted to make, whether, you know, it means anything, is that through the complaint, there were a lot of things regarding that I had committed fraud, that I had promoted this or had–you know, was involved in the Ponzi scheme itself.
>       And I categorically deny that. I did not do any of that. I was basically on the fringe of this[.]

(Docket Entry No. 108-5, Shirck Depo. Tr. at 144.) The CFTC did not include with its submission the next page or pages of the deposition transcript in which Defendant Shirck concluded his remarks. Thus, the Court does not know what more Shirck had to say about his role, but it is clear he did testify under oath that he denied any intent to defraud or misappropriate customer funds.

**B. Defendant Mealing**

As to Defendant Ron Mealing, the CFTC alleges that, beginning in late May 2004, Foreign Fund had customer funds sent by check or wire for deposit into two accounts at a Bank of America branch in Nashville. Both accounts were held in the name of Relief Defendant MWFIRST (TRUSTEES), INC., and Defendant Mealing, who formerly worked as a Certified Public Accountant in his native Australia, was custodian and sole signatory. The CFTC further alleges that none of the funds from the Bank of America Accounts were received by or sent to any regulated financial institution, clearinghouse or other designated contract facility that might indicate the existence of trading activity. The CFTC alleges that most of the $2 million in customer funds that Mealing withdrew from the Bank of America accounts was sent to other Foreign Fund customers who requested withdrawals. In addition, Mealing sent customer funds from the Bank of America accounts to Foreign Fund employees, including Fastian, Whitley, Dow, Shirck and himself. Mealing also sent about $300,000 in customer funds to Fastian or his wife for services or loans that Fastian maintained he rendered to Foreign Fund in connection with creating and maintaining the Foreign Fund website, www.ff-bank.com. Mealing also sent approximately $125,000 from the Bank of America accounts

6

to an overseas account in Riga, Latvia, in the name of Relief Defendant Star Connection, Inc.

The CFTC claims that Defendant Mealing, as a Foreign Fund customer himself, knew that customer funds were solicited for the purpose of engaging in foreign currency trading and he knew that customers intended the funds to be used for foreign currency futures trading. The CFTC alleges that Mealing misappropriated customer funds and failed to disclose to customers that funds were not traded in foreign currency futures contracts, but were instead paid to other Foreign Fund customers and employees, including Fastian.

In his unsworn response to the CTFC's motion for partial summary judgment, Defendant Mealing denied that he misappropriated funds or conducted any fraudulent activity and stated that he acted on the instructions of others at times "under some considerable duress." (Docket Entry No. 113 at 1-3, 6.) According to deposition excerpts provided by the CFTC, Defendant Mealing testified that he received Foreign Fund monies and disbursed them under instructions from Martin, Don Snider and Jon Crum. (Docket Entry No. 108-3, Mealing Depo. Tr. at 42.) Mealing further testified that, when he realized that money was coming in from customers, that a significant amount of money was going out to Star Connection, Inc., but that Martin was not sending back any money from currency transactions, he became concerned and questioned Martin in an Internet chat room about the Foreign Fund operation. Mealing testified Martin promised to send money but never did, and Martin refused to disclose the location of his trading account. (Id. at 55-61.) Mealing became "highly suspicious" that there was no trading. (Id. at 61.) Mealing testified he was "ready to throw the whole thing in[,]" but two investors contacted him and asked him to stay with it because no one else could provide any information about Foreign Fund. (Id. at 62.) According to Mealing, Martin told administrative employees of Foreign Fund to post Mealing's telephone number on the Internet and, as a result, Mealing received hundreds of telephone calls until he felt "hounded to death" because everyone was looking to him for the money. (Id. at 63.) Mealing denied that he ever

7

solicited funds for Foreign Fund and testified that when he refused Martin's instructions to pay certain people, Martin fired him.  (Id. at 162, 258-259.)

**C.  Defendant Fastian**

The CFTC makes allegations against Defendant Fastian due to his hosting of the ffbank.com website and his control over customer accounts with the e-gold, Intgold and Evocash Internet-based value transfer firms.  Fastian did not file a response to the CFTC's motion for partial summary judgment.  During an investigative deposition with the CTFC on September 10, 2004, Fastian testified that he invested in Foreign Fund, but did not expect to see a return of his investment because he believed the money was never invested and it is gone. (Docket Entry No. 108-7, Fastian Investigative Testimony at 58, 74-75.)  Fastian believes that he did not do anything wrong.  (Id. at 9.)  He testified that he worked with programmers to set up software and then began hosting a Foreign Fund website.  (Id. at 41, 102-103, 147-148.)  Martin did not pay Fastian for long workweeks keeping hackers off the website and for equipment Fastian provided for Foreign Fund.  (Id. at 57, 60, 126.)  At the time of the deposition he continued to host the website because he wanted to find Martin.  (Id. at 125.)

The record shows that the Magistrate Judge sanctioned Fastian in July 2006 for failing to appear for his deposition in this case and ordered him to appear for a deposition in August 2006. (Docket Entry No. 93.)  Fastian then traveled to his home country of Austria and asked the Court to delay his deposition because he was having difficulty obtaining a visa to return to the United States.  (Docket Entry No. 94.)  On September 8, 2006, the Magistrate Judge gave Fastian thirty days to return to the United States and schedule a deposition.  (Docket Entry No. 96.)  Fastian did not return.  On November 6, 2006, Fastian filed with the Court his temporary contact information

8

in Austria and indicated he hoped to return to the United States after the holidays.[2] (Docket Entry No. 111.) On February 16, 2007, Fastian's wife filed with the Court an update on Fastian's status, claiming that he was still trying to obtain a visa to return to the United States. (Docket Entry No. 117.)

### D. Relief Defendant Deana Whitely

The CFTC alleges that Relief Defendant Deana Whitely, who was a Foreign Fund investor and "communications officer," received $245,424.42 in payments that originated from Foreign Fund customer monies sent to Union Bank of California and the Bank of America in Nashville. This Court's October 5, 2004 *ex parte* Order required Whitely to produce a full accounting of all funds and assets, including customer funds, which she received and disbursed. The CFTC claims Whitely failed to make the accounting, and declined to respond to the CFTC's interrogatories. There is no indication in the record that the CFTC moved to compel Whitely to respond to the interrogatories or to comply with the Court's *ex parte* Order. The CFTC claims that, because Whitely has not established a legitimate claim to the Foreign Fund money sent to her, she has forfeited her right to the money and therefore, she should disgorge the full amount she received.

### E. Relief Defendant Star Connection, Inc.

The CFTC claims that $533,000 was wire-transferred from the Foreign Fund account at the Union Bank of California and $125,000 was wire-transferred from the Foreign Fund account at the Bank of America account in Nashville to an account in the name of Star Connection, Inc. at the Reitumu Bank in Riga, Latvia. In total, $658,000 in Foreign Fund customer money was sent to Star Connection, Inc. Because Star Connection, Inc., has no legitimate claim to any customer funds, the CFTC alleges that Star Connection, Inc. should disgorge the $658,000 in Foreign Fund customer

---

[2]On January 31, 2007, the CFTC again moved for sanctions against Fastian for failure to comply with the Court's discovery Order. This motion will be returned to the Magistrate Judge for ruling.

money it received. Star Connection, Inc. was served with the original Complaint, but did not file an answer. The record contains no indication that the Amended Complaint was served on Star Connection, Inc.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. ANALYSIS

None of the *pro se* Defendants or the Relief Defendants responded properly to the CFTC's motions for partial summary judgment, as required by Federal Rule of Civil Procedure 56 and Local Rule 56.01. On the other hand, in its proposed Orders of Judgment Against Defendants Fastian, Mealing, and Shirck and Relief Defendants Deana Whitely and Star Connection, Inc. (Docket Entry Nos. 103-1, 104-1, 105-1, 106-1, 107-1), the CFTC asks the Court to make findings of fact that Foreign Fund was an illegal operation and that Defendants Shirck, Mealing and Fastian misappropriated customer funds. It is black letter law that, on motion for summary judgment, the Court may not make findings of fact. The Court may only take the facts in the light most favorable to the non-moving parties and grant summary judgment in favor of the CFTC only if there are no genuine issues of material fact for trial. See Anderson, 477 U.S. at 248; Matsushita Elec. Indus. Co., 475 U.S. at 587.

Despite the failure of Defendants Shirck and Mealing to provide affidavits or other evidence in support of their responses to the partial summary judgment motions and the failure of Defendant Fastian to respond at all, the deposition transcript excerpts the CFTC itself submitted show that there are genuine issues of material fact for trial about whether Shirck, Mealing, and Fastian misappropriated monies sent by customers to Foreign Fund. It may be that upon trial of this matter, the CFTC will be able to prove that misappropriation of customer funds occurred. But here, Shirck, Mealing, and Fastian deny that they solicited or misappropriated Foreign Fund customer money, and Shirck and Mealing flatly deny that they had any intent to defraud. These denials under oath present classic factual disputes that must be submitted to the finder of fact for resolution.

The CFTC states that the conduct of Shirck, Mealing, and Fastian was "at a minimum reckless[,]" and reckless disregard is sufficient to establish scienter, citing Drexel Burnham Lambert,

11

Inc. v. CFTC, 850 F.2d 742, 748 (D.C. Cir. 1988). But whether recklessness is established is still a genuine issue of material fact on this record.

Relief Defendants Deana Whitely and Star Connection, Inc. failed to respond to the CFTC's motions for partial summary judgment against them. Under Local Rule 56.01(g), a failure to respond to a moving party's statement of material facts within the time period provided indicates that the asserted facts are not disputed for purposes of summary judgment. Moreover, Deana Whitely's answer to the original Complaint, which is not under oath, is insufficient to withstand a motion for partial summary judgment under Rule 56(e). See Celotex Corp., 477 U.S. at 325. The record presented by the CFTC establishes that Foreign Fund customer money was sent to these two Relief Defendants, and these Relief Defendants have not generated any genuine issues of material fact about the nature of the funds that were sent to them. Accordingly, the CFTC is entitled to partial summary judgment on the issue of liability as to Relief Defendants Whitely and Star Connection Inc.

## IV. CONCLUSION

The deposition excerpts submitted by the CFTC establish that there are genuine issues of material fact for trial on the CFTC's claims against Defendants Fastian, Shirck, and Mealing. Therefore, Plaintiff's Motions For Partial Summary Judgment Against Defendants Wolfgang J. Fastian, Ron Mealing and John Shirck (Docket Entry Nos. 103-105) will be DENIED. Relief Defendants Deana Whitely and Star Connection, Inc. failed to respond to the partial summary judgment motions brought against them, and the CFTC has shown that it is entitled to summary judgment against these two Relief Defendants. Accordingly, Plaintiff's Motions For Partial Summary Judgment Against Relief Defendants Deana Whitely and Star Connection, Inc. (Docket Entry Nos. 106 & 107) will be GRANTED.

Plaintiff's Motion to Ascertain Status of Partial Summary Judgment Motions Against Mealing, Shirck and Fastian (Docket Entry No. 118) will be DENIED AS MOOT. Plaintiff's Motion for Sanctions Against Wolfgang J. Fastian for Failure to Comply with Court's Discovery Order (Docket Entry No. 116) is RESERVED for ruling by the Magistrate Judge. This case will be returned to the Magistrate Judge for further case management under Local Rule 16.01, to include the setting of a trial date.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

13