UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| Commodity Futures Trading Commission, | No.3:O4 CIV 3 04 0898 |
| Plaintiff, | JUDGE ECHOLS |
| v. | |
| Foreign Fund a/k/a First Bank, Ron Mealing, John Shirck, and Wolfgang J. Fastian, | |
| Defendants, | |
| Wally Dow, MW First Inc., MW First Trustees Inc., Wolfgang J. Fastian, Deana Whitely, and Star Connection Inc., | |
| Relief Defendants. | |

**ORDER OF PERMANENT INJUNCTION AND OTHER
EQUITABLE RELIEF AGAINST DEFENDANT
WOLFGANG J. FASTIAN**

**I.**

This matter is before this Court on the motion of Plaintiff United States Commodity Futures Trading Commission ("CFTC") seeking entry of an Order of Permanent Injunction and Other Equitable Relief against Defendant Wolfgang J. Fastian ("Fastian") for violation of 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2002), and CFTC Regulations ("Regulations") 1.1(b)(1) and (3), 17 C.F.R.§§ 1.1(b)(1) and (3) (2004), as alleged in the amended Complaint. The CFTC's motion also seeks disgorgement against Fastian as a Relief Defendant.

The Court has considered the amended Complaint, the CFTC's *Memorandum in Support of Plaintiff's Motion For Order of Summary Judgment Against Defendant Wolfgang J. Fastian,*

Plaintiff's Concise Statement of Facts in Support of Judgment, containing evidence supporting the allegations in the amended Complaint and the relief requested, the Magistrate Judge's Report and Recommendation of September 26, 2007 and the testimonial evidence presented at the non-jury trial held on February 12, 2008. Being fully advised in the premises, the Court finds that there is good cause for the entry of this Order and that there is no just reason for delay. The Court therefore directs the entry of an Order of Permanent Injunction and Other Equitable Relief against Fastian.

## II.

## JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the CFTC may bring an action against such person to enjoin such practice or to enforce compliance with the Act.

The CFTC has jurisdiction over the transactions in foreign currency alleged in the complaint. Pursuant to Sections 2(c)(2)(B) and 4(a) of the Act, 7 U.S.C. §§ 2(c)(2)(B) and 6(a), an agreement, contract or transaction in foreign currency that is a contract of sale of a commodity for future delivery, that is offered to, or entered into with a person that is not an eligible contract participant must be conducted on or subject to the rules of a board of trade designated or registered by the CFTC as a contract market or derivatives transaction execution facility for such commodity, and executed or consummated by or through a contract market, unless the counterparty to such transaction is one of the six regulated entities designated under Section 2(c)(2)(B)(ii) of the Act, 7 U.S.C. § 2. Foreign Fund was not a proper counterparty who

2

could offer and/or enter into foreign currency futures transactions with persons who are not eligible contract participants, i.e., retail customers.

Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because defendants Foreign Fund and Fastian transacted business in the Middle District of Tennessee, and the acts and practices in violation of the Act occurred within this District, among other places.

## III.

## FINDINGS OF FACT

### A. The Operation of Foreign Fund

Between at least November 2003 and October 2004 (the "relevant time"), Defendant Foreign Fund a/k/a First Bank ("Foreign Fund"), through its websites and representatives, solicited more than $7.7 million in funds from customers who opened over 16,000 accounts, purportedly to be used for trading foreign currency futures contracts.

The Foreign Fund firm was an Internet entity established by anonymous persons who concealed their identity for the purpose of defrauding customers. Foreign Fund operated its initial website, *www.foreign-fund.com,* through an Internet service provider based in Ukraine. The operators of Foreign Fund conducted business exclusively through the Internet. Foreign Fund's manager, "Martin," hired Fastian, who was a Foreign Fund customer.

However, customer funds were not traded as promised. Of the more than $7.7 million that customers deposited to their Foreign Fund accounts, none was transferred to any regulated financial institution, clearinghouse, or other designated contract facility that might indicate the existence of trading activity. Instead, many of the funds were either misappropriated, returned to earlier customers or transferred overseas in an operation that was tantamount to a Ponzi scheme.

### B. Fastian Misappropriated Customer Funds

3

Fastian was responsible for hosting and maintaining the servers for the Foreign Fund customer online website at *www.ff-bank.com,* which began operating sometime between February and March 2004. Fastian had free access to the contents of the website he hosted, which included Foreign Fund's customer account database, customer chat room and customer forum.

During the period from March to September 2004, Fastian had access to and exercised various degrees of control over various Foreign Fund's Internet-based financial accounts containing customer funds. From at least October 2003 through September 2004, Foreign Fund instructed customers to deposit funds directly to accounts the firm held at the Internet-based value transfer firm e-gold, and beginning in early 2004 through accounts at the Internet-based value transfer firms Intgold and Evocash.

Between November 2003 and August 2004, Foreign Fund customers sent $3.9 million dollars to the e-gold accounts held by Foreign Fund. At various times between at least March and June 2004, Fastian made payments to Foreign Fund employees, customers and himself from the customer funds in Foreign Fund's e-gold account. Fastian was aware that funds from the e-gold accounts receiving Foreign Fund customer monies were used to make payments to him and to customers seeking to withdraw monies from their Foreign Fund accounts.

For at least a two-week period in May 2004, Fastian exercised exclusive control over and withdrew money from Foreign Fund's Internet-based financial accounts, which were the repository of customer funds. During the month of May 2004, $132,684 of customer funds was transferred from Foreign Fund's e-gold accounts to other accounts including the accounts of Foreign Fund customers. During the last two weeks in May, at least $28,500 in customer funds was transferred from the Foreign Fund's e-gold accounts to Fastian's e-gold account and approximately $74,000 to the accounts of other parties.

During the two-week period May when Fastian exercised exclusive control over Foreign Fund's e-gold accounts, and at other times, he effected the transfer of customer funds to his own e-gold account and to the e-gold accounts of others, including Foreign Fund employees.

Fastian was aware that no funds from the e-gold accounts containing Foreign Fund customer monies were received by or sent to any regulated financial institution, clearinghouse, or other designated contract facility that might indicate the existence of trading activity on behalf of Foreign Fund. Because, among other reasons, Fastian was a customer of Foreign Fund, he knew that the customer monies in the Foreign Fund e-gold accounts that he sent to himself or to other parties were solicited for the purpose of engaging in foreign currency futures trading and knew that customers intended the funds to be used for foreign currency futures trading.

Fastian misappropriated Foreign Fund customer monies solicited for the exclusive purpose of engaging in foreign currency futures trading by sending them to himself or to other parties, including Foreign Fund customers and employees.

**C.      Fastian As a Relief Defendant**

The evidence presented at the non-jury trial demonstrated that Fastian received Foreign Fund customer funds in the amount of $187,000 to which he was not entitled.

## IV.

## CONCLUSION OF LAW

Fastian committed misappropriation fraud in connection with futures transactions. During the relevant time, Fastian violated Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii, and Regulations 1.1(b)(1) and (3), 17 C.F.R.§§ 1.1(b)(1) and (3), in that he cheated or defrauded or attempted to cheat or defraud customers or prospective customers making investments in the Foreign Fund, and willfully deceived or attempted to deceive customers or prospective customers, by misappropriating funds from customers.

# V.

## ORDER OF PERMANENT INJUNCTION

**IT IS HEREBY ORDERED** that Fastian is permanently restrained, enjoined, and prohibited from directly or indirectly:

1. Cheating or defrauding or attempting to cheat or defraud other persons and willfully deceiving or attempting to deceive other persons by making false, deceptive or misleading representations of material facts, by failing to disclose material facts, or by misappropriating customer funds in or in connection with orders to make, or the making of, contracts of sale of commodities for future delivery, made or to be made for or on behalf of any other person in violation of Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2002), and Regulations 1.1(b)(1) and (3), 17 C.F.R.§§ 1.1(b)(1) and (3).

2. The injunctive provisions of this Order shall be binding on Fastian, upon any person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of Fastian, and upon any person who receives actual notice of this Order by personal service or otherwise insofar as such person is acting in active concert or participation with Fastian.

# VI.

## RESTITUTION, DISGORGEMENT, CIVIL MONETARY PENALTY, AND ANCILLARY RELIEF

**IT IS FURTHER ORDERED THAT:**

**A.  Restitution**

1. Fastian shall pay restitution in the amount of $28,500, plus post-judgment interest, within ten days of entry of this Order.

6

2. Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

**B.** **<u>Disgorgement</u>**

3. Fastian shall pay disgorgement in the amount of $187,000, plus post-judgment interest, within ten days of entry of this Order.

4. Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

**C.** **Appointment Of The Monitor**

5. To effect payment by Fastian and distribution of restitution and disgorgement, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor"). The Monitor shall collect restitution and disgorgment payments from Fastian, and make distributions as set forth below. Because the Monitor is not being specially compensated for these services, and these services are outside the normal duties of the Monitor, the Monitor shall not be liable for any action or inaction arising from the Monitor's appointment, other than actions involving fraud.

6. Fastian shall make restitution and disgorgement payments under this order in the name "Fastian-Foreign Fund – Restitution/Disgorgement Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier check, or bank money order, to Office of Administration, National Futures Association, 200 W. Madison Street #1600, Chicago, Illinois 60606-3447 under cover letter that identifies himself and the name and docket number of the proceeding. Fastian shall simultaneously transmit copies of the cover letter and the form of payment to (a) the Director, Division of Enforcement, U.S.

7

Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581, and (b) the Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address.

7. The Monitor shall oversee Fastian's restitution/disgorgement obligation, and shall have discretion to determine the manner for distribution of funds in an equitable fashion to defrauded Foreign Fund customers, as appropriate, or may defer distribution until such time as it deems appropriate. In the event that the amount of payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative costs of the making a restitution distribution is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part VI.D, below.

8. Fastian shall cooperate with the Monitor as appropriate to provide such information as the NFA deems necessary and appropriate to identify Foreign Fund customers to whom the Monitor, in his sole discretion, may determine to include in any plan for distribution of any restitution and/or disgorgement payments.

9. To the extent that any funds accrue to the U.S. Treasury as a result of either the restitution or disgorgement obligation in this Order, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth in this Part.

**D.** **Civil Monetary Penalty**

1. Fastian shall pay a civil monetary penalty in the amount of $240,000.00, plus post-judgment interest, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1. The civil monetary penalty shall be paid within ten days of entry of this Order.

2. Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order, pursuant to 28 U.S.C. § 1961.

3. Fastian shall pay this civil monetary penalty by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> Attn: Marie Bateman-AMZ-300,
> DOT/FAA/MMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> Telephone: 405-954-6569

If the payment is to be made by electronic funds transfer, Fastian shall contact Marie Bateman or her successor at the above address to receive payment instructions and shall fully comply with those instructions. Fastian shall accompany the payment of this penalty with a cover letter that identifies Fastian and the name and docket number of this proceeding. Fastian shall simultaneously transmit copies of the cover letter and the form of payment to (a) the Director, Division of Enforcement, Commodity Futures Trading Commission, 1155 21st Street, NW, Washington, D.C. 20581, and (b) the Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address.

### E.  **Jurisdiction**

This Court shall retain jurisdiction of this cause in order to implement and carry out the terms of all orders and decrees that may be entered herein, to assure compliance with this Order and for all other purposes related to this action.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Order Of Permanent Injunction And Other Equitable Relief Against Defendant Wolfgang J. Fastian.

**IT IS SO ORDERED.**

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE